King BROWN

v.

PROVIDENCE GAS CO.

Civ. A. No. 75–0256.

United States District Court,
D. Rhode Island.

Dec. 6, 1976.

Alden C. Harrington, R. I. Legal Services, Providence, R. I., for plaintiff.

Thomas R. Courage, Providence, R. I., for defendant.

## MEMORANDUM AND ORDER

PETTINE, Chief Judge.

This case, before the Court on cross-motions for summary judgment, requires determination of whether certain provisions of the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.* (1970) (Truth-In-Lending Act) and regulations of the Federal Reserve Board issued thereunder, Regulation Z, 12 C.F.R. § 226.8 (1976), were violated by a credit sale contract prepared by defendant and signed by plaintiff. Also to be decided is the question of whether the limitations provision contained in the Act, 15 U.S.C. § 1640(e), bars certain claims contained in plaintiff's amended complaint.

The facts in this case are simple and undisputed. On August 27, 1974, plaintiff purchased a water heater on credit from defendant Providence Gas Company, executing a "Conditional Sales Contract". (Appendix "A"). On August 25, 1975, plaintiff filed a complaint in this Court, alleging that the contract departed in certain particulars, detailed below, from the requirements of the applicable Federal Reserve Board regulations, as illustrated in the Board's model Retail Installment Contract, CCH Consumer Credit Guide par. 3853 (Appendix "B"). The complaint sought damages of $100, costs, and attorney's fees.

### A. *Count I*

Plaintiff contends that the contract failed to identify the method of computing unearned interest to be rebated to him in the event that he paid his debt to the Gas Company in advance of its maturity date. Plaintiff contends that the language in the contract describing how the rebate would be calculated fails to satisfy the requirements of Regulation Z, 12 C.F.R. § 226.-8(b)(7), adopted pursuant to 15 U.S.C. § 1604 (1970).

The contract provides that in the event of prepayment in full "the finance charge will

be partially refunded on the assumption that the finance charge is paid in equal monthly installments over the term of this contract". Plaintiff contends that this language is insufficient because it fails explicitly to state that the rebate computation method used is the "Pro-Rata" method.

The Court finds this claim without merit. Courts have disagreed over whether a full explanation of the rebate method must be included in the contract or whether a shorthand designation (such as "Pro-Rata") is sufficient. *Compare Bone v. Hibernia Bank*, 493 F.2d 135 (9th Cir. 1974) *with Johnson v. Associates Finance, Inc.*, 369 F.Supp. 1121 (S.D.Ill.1974). But no court has held that a full explanation of the rebate method is *less* satisfactory than a mere short-hand identification. Regulation Z does require the use of "magic words" such as "finance charge" or "annual percentage rate" 12 C.F.R. §§ 226.8(c)(3), (b)(2); *see Powers v. Sims and Levin Realtors*, 396 F.Supp. 12, 19 (E.D.Va.1975), but no such requirement is imposed for rebate computations. Absent such a requirement or any evidence that a full explanation of the rebate method is somehow less understandable than a cryptic abbreviation, the Court grants summary judgment to defendant on this count. *See Woods v. Beneficial Finance Co.*, 395 F.Supp. 9, 12 (D.Or.1975).

**B.** *Count II*

▇ Plaintiff next contends that the contract failed properly to identify the item of property in which defendant took a security interest, as required by Regulation Z, 12 C.F.R. § 226.8(b)(5). The contract grants defendant a security interest in 1 A. O. Smith (make) PGD 40 (model) W. H. (item). Plaintiff insists that it was necessary for the contract to spell out "water heater" rather than use the abbreviated form.

Section 226.8(b)(5) requires "a clear identification of the property to which the security interest relates". This language has been interpreted to mean "that the goods

must be identified so as to preclude any reasonable question regarding the goods to which the security interest attaches", *Kenney v. Landis Financial Group, Inc.*, 349 F.Supp. 939, 945 (N.D.Iowa 1972). The description in the present contract meets this test. In view of the fact that the contract consummated the sale of the very water heater identified therein and the fact that the make and model of the water heater were precisely listed, it cannot be seriously maintained that the abbreviation "W.H." was susceptible of misunderstanding or confusion. Thus, because the identification of goods in the contract meets the requirements of Regulation Z, summary judgment in favor of defendant must be granted on this count.

**C.** *The Statute of Limitations*

▇ Defendant takes the position that the remainder of the alleged violations of Regulation Z in the August 27, 1974 contract are barred by the relevant statute of limitations, 15 U.S.C. § 1640(e) (1970). The question arises because, although the original complaint in this action was filed within the one-year period provided by the statute, plaintiff also seeks judgment on certain further claimed Truth-In-Lending violations in the 1974 contract, not included in the original complaint but added in an amended complaint filed after the limitations period had expired.[1]

In arguing that the limitations statute does not bar his amended complaint, plaintiff relies on Rule 15(c). F.R.Civ.P., which provides that a claim arising out of "the conduct, transaction, or occurrence . . . set forth in the original pleading" relates back to the time the first pleading is filed and thus tolls the statute of limitations. Plaintiff contends that because all of his counts deal with the legal sufficiency of various provisions of a single contract, the rule should apply and take his amended complaint out of the limitations provisions of the Truth-In-Lending Act.

---

1. Defendant raised the limitations issue at the time plaintiff sought to file his amended complaint but the Court reserved judgment on this point, permitting the amended complaint to be filed subject to later dismissal.

The Court agrees. The purpose of Rule 15(c) is to ameliorate the harsher aspects of limitations periods when this can be done without surprise or prejudice to the opposing party. *See* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1497 at 499. Such a requirement is generally met where, as here, the amended pleading arises out of the same occurrence as the original complaint. As one court has said:

> When a suit is filed in a federal court under the Rules, the defendant knows that *the whole transaction described in it will be fully sifted*, by amendment if need be, and that the form of the action or the relief prayed *or the law relied on* will not be confined to their first statement.

*Barthel v. Stamm*, 145 F.2d 487, 491 (5th Cir.), *cert. denied*, 324 U.S. 878, 65 S.Ct. 1026, 89 L.Ed. 1430 (1944) (emphasis added).

In the present case, all of the claims raised in the original complaint arise from the same contract; the amount of damages are tied to the finance charge and do not vary according to the number of violations; and defendants make no claim of prejudice. Under these circumstances the Court holds that the statute of limitations does not prevent plaintiff from raising the claims presented in his amended complaint.[2]

### D. *Count III*

Plaintiff next contends that the contract failed to disclose the number of payments due, in violation of Regulation Z, 12 C.F.R. § 226.8(b)(3). The contract provides for "23 monthly installments of $12.00 each with a final monthly payment of $17.24". Plaintiff argues that, under the Act, the consumer cannot be expected to make the calculation necessary to arrive at the final total of 24 monthly payments. In support of this position, they cite the case of *Powers v. Sims and Levin Realtors, supra*, in which Judge Merhige holds that in the interest of furthering the Congressional policy of full disclosure, the Act and Regulation Z must be strictly construed to require the creditor to give the total number of payments.

The Court is much persuaded by the rationale advanced by Judge Merhige and would be inclined to follow the *Powers* case but for two distinguishing features. In the first place, the language used by the creditor in *Powers* made no mention of a "final payment" but spoke of a "balance due" after a stated number of monthly payments. Such language would arguably tend to mislead the unwary or inexperienced buyer. The "final payment" language of the present contract, on the other hand, calls attention to the fact that after the 23 payments have been made another payment is due. This phraseology meets the requirements of § 226.8(b)(3).

In addition to the distinguishing facts of the *Powers* case, the Court notes that the language used in the contract in the present case is almost exactly the same as that used in the model form promulgated by the Board of Governors of the Federal Reserve Board, CCH Consumer Credit Guide par. 3853 (appendix "B"). Section 130(f) of the Act, 25 U.S.C. § 1640(f) (1970) shields creditors from liability for good faith actions done pursuant to the Board's interpretations of the Act and this provision would clearly appear to cover the present case, where the Board's form invites conflict with the Act's provisions as judicially construed. In adopting section 130(f) Congress encouraged creditors to rely on the Board's interpretations and it would ill serve that policy if the Court were to impose liability in the present case. Accordingly, defendant's motion for summary judgment on this count is granted.

### E. *Count IV*

The final claim pressed by plaintiff is a claimed violation of Regulation Z, 12 C.F.R. § 226.8(c)(5), in that the contract fails to use the term "unpaid balance".

---

**2.** This result is in no way affected, as defendant would have it, by the fact that the relevant statute of limitations requires claims to be brought within one year, rather than some longer period. Rule 15(c) is predicated on the belief that once litigation concerning a particular occurrence has begun, the parties are no longer entitled to the protection of the limitations statute, whether the period of limitations is long or short. *Cf.* 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1496 at 1482–83.

In order to assess the merits of this claim, it will be helpful to quote section 226.8(c) in its entirety:

(c) *Credit sales.* In the case of a credit sale, in addition to the items required to be disclosed under paragraph (b) of this section, the following items, as applicable, shall be disclosed:

(1) The cash price of the property or service purchased, using the term "cash price".

(2) The amount of the downpayment itemized, as applicable, as downpayment in money, using the term "cash downpayment", downpayment in property, using the term "trade-in" and the sum, using the term "total downpayment".

(3) The difference between the amounts described in subparagraphs (1) and (2) of this paragraph, using the term "unpaid balance of cash price".

(4) All other charges, individually itemized, which are included in the amount financed but which are not part of the finance charge.

(5) The sum of the amounts determined under subparagraphs (3) and (4) of this paragraph, using the term "unpaid balance".

(6) Any amounts required to be deducted under paragraph (e) of this section using, as applicable, the terms "prepaid finance charge" and "required deposit balance", and, if both are applicable, the total of such items using the term "total prepaid finance charge and required deposit balance".

(7) The difference between the amounts determined under subparagraphs (5) and (6) of this paragraph, using the term "amount financed".

(8) Except in the case of a sale of a dwelling:

(i) The total amount of the finance charge, with description of each amount included, using the term "finance charge", and

(ii) The sum of the amounts determined under subparagraphs (1), (4), and (8)(i) of this paragraph, using the term "deferred payment price".

The Court notes that the prescribed terminology set forth in this section is mandatory where applicable.

Accordingly, the only defense available to defendant is to argue, as it does, that the term is inapplicable. Defendant reasons as follows: since, in the contract at issue, the "amount financed", the "unpaid balance", and the "unpaid balance of the cash price" are all the same ($244.73), the use of one term—"amount financed"—is the equivalent of using all three terms and therefore the full disclosure policy embodied in the Act generally and in section 226.8(c) in particular is satisfied by use of the term "amount financed".

The Federal Reserve Board and the District Court for the Northern District of Georgia have adopted a position analogous to that now urged by defendant. Federal Reserve Board Public Position Letter No. 536 (September 23, 1971) states:

"You question whether it is necessary to show the 'unpaid balance' pursuant to § 226.8(c)(5) when there are no other charges to be disclosed pursuant to § 226.8(c)(4), and no prepaid finance charges or required deposit balances under § 226.8(c)(6). In those circumstances the 'amount financed' would be the same figure as the 'unpaid balance of cash price' and the 'unpaid balance', and the latter term could appropriately be omitted."

CCH Consumer Credit Guide par. 30,748. *See Rolader v. Georgia Power Co.,* CCH Consumer Credit Guide par. 98,551 (N.D.Ga. 1975); *Ivy v. Atlanta Gas Light Co.,* CCH Consumer Credit Guide par. 98,704 (N.D.Ga. 1974). *But see Mitchell v. Dixie Furniture Co., Inc.,* CCH Poverty Law Reporter [1972–1974 Transfer Binder.] par. 17,990 (N.D.Ga.1973).

In deciding whether the term "unpaid balance" is applicable in the present case, where "unpaid balance of cash price" is also omitted, the relevant inquiry is whether the disputed term, either in its substantive content or in the manner in which it makes disclosure, *cf. Frank v. Reserve Consumer Discount Co.,* 398 F.Supp.

703, 704 (W.D.Pa.1975), provides information that Congress, through the Act, deems necessary or desirable to insure that the consumer is fully informed and can easily compare the competing offers of various creditors on the basis of documents that use uniform terminology. *See Mitchell v. Dixie Furniture Co., Inc., supra.*

█ The Court must also be mindful that with respect to the use of terms required by § 226.8(c), creditors are given some leeway in preparing their forms so as to comply with the Act and with Regulation Z, so long as the basic purposes of full disclosure and uniform terminology are not departed from. The instructions accompanying the Federal Reserve Board's model Retail Installment Contract make this point, *see* Appendix "B", as does the "as applicable" language contained in Section 226.8 of Regulation Z.[3]

█ Examining the disputed contract with these considerations in mind, the Court is unconvinced that the inclusion of the term "unpaid balance" is required by Regulation Z in the present case, even though the contract also omits "unpaid balance of cash price". The contract makes it quite clear what the cost of the heater is, what additional charges are added to that basic cost, what the finance charge and annual percentage rate are, and how the total credit price compares with the total cash price. These disclosures meet the requirements of the Act and of Regulation Z both in substance and in form, and more will not be required.

The Court's conclusion might be otherwise if plaintiff offered any suggestions as to how use of the term "unpaid balance" in addition to the term "amount financed" would put the consumer in a better position than is now the case. Likewise, the Court might reach a different result if the contract failed to make the component elements of the cash price and the amount financed abundantly clear.[4] Given the clarity of the present contract, however, the Court holds that "unpaid balance" is not an applicable term, for this particular contract, within the meaning of section 226.8(c) of Regulation Z. Accordingly, summary judgment will be granted in favor of defendant on this count. In reaching this conclusion, the Court does not depart from the principle that the Act must be strictly construed so as to effectuate its purposes. *See, e. g., Woods v. Beneficial Finance Co.,* 395 F.Supp. 912 (D.Or.1975). Where the Act or Regulation Z dictates uniformity of expression, the Court will strictly enforce technical requirements. *See Powers v. Sims and Levin Realtors,* 396 F.Supp. at 20. Where, however, some flexibility is permitted to the creditor, the Court will look to the document as a whole.

The Court would hope that an already overcrowded docket will not be further exacerbated by "Consumer Credit" cases premised on the presence or absence of talismanic verbiage, in deciding whether there is compliance with the disclosure policy of the Act. Such tactics serve no useful purpose to the consumer, creditor, Congressional intent or the Court.

#### F. Claim Abandoned by Plaintiff

Plaintiff, in his Memorandum in Support of Motion for Summary Judgment, states

---

3. The Court notes that the Federal Reserve Board's model Retail Installment Contract dispenses with the term "unpaid balance" even though there are places on the form for "other charges". *See* Appendix "B".

4. Plaintiff argues that the contract should have listed a cash price of $209.50, deducted the cash downpayment of $30.00, and thus reached an "unpaid balance of cash price" of $179.50. To this figure, plaintiff argues, the installation charge, permit fee, and sales tax should have been added to reach a figure known as the "unpaid balance". This last figure would then be repeated under the label "amount financed".

While this argument is not without force, the Board's view, to which the Court gives great weight, *see Rolader v. Georgia Power Co., supra,* that "unpaid balance" can be omitted where there are no intervening "other charges" that would make the "unpaid balance" different from the "unpaid balance of cash price", would seem to compel the conclusion that where the "other charges" are itemized and computed as part of the cash price, thus rendering the "unpaid balance of cash price" and "unpaid balance" equal to the "amount financed", both of the former terms may be omitted.

that he no longer contends that defendant has failed to disclose the method of computing the amount of late charges, or their method of computation as required by Regulation Z, 12 C.F.R. § 226.8(b)(7). This claim is therefore dismissed with prejudice, thereby rendering moot defendant's motion for summary judgment on this issue.

The above-captioned case having been submitted to the Court on cross-motions for summary judgment and having been considered on the basis of memoranda submitted by the parties, it is hereby ORDERED that:

1. Plaintiff's claim that defendant failed properly to disclose the method of computing late charges is dismissed.

2. On all other claims, summary judgment is granted in favor of defendant.

3. Each party will bear its costs.

4. Plaintiff's motion that he be awarded attorney's fees is denied.

So Ordered.

## APPENDIX A

### CONDITIONAL SALE CONTRACT

*New Lease w/ Down Paymen*

Date 8-27-74

The undersigned (hereinafter called "Buyer") hereby buys from Providence Gas Company (hereinafter called "Company") and grants to the Company a security interest in, subject to the terms and conditions below, the following described property:

| No. | Make | Model | Item |
|---|---|---|---|
| 1 | H.O. SMITH | PSD 40 | W-H |

to be used at 291 POTTERS AVE, (Street) PROV (City) and not elsewhere except by written consent of the Company.

1) Cash Price . . . . . . . . . . . . $ 209.50
2) Installation Charge . . . . . . . . . $ 49.00
3) Permit . . . . . . . . . . . . $ 5.75
4) R. I. Sales Tax—5% on $ 209.50 . . . . $ 10.48
5) Total Cash Price (Sum of 1, 2, 3 and 4) . . . . $ 274.73
6) Trade-in Allowance on . . . . . . . . $

**CHARGED**
**SEP 0 4 1974**
**INVOICE 67903**

7) Cash downpayment . . . . . . . . .
8) Total downpayment (6 and 7) . . . . . . $ 30.00
9) Amount Financed (5 minus 8) . . . . . $ 244.73
10) FINANCE CHARGE . . . . . . . . $ 48.51
11) Total of payments (Sum of 9 and 10) . . . . $ 293.24
12) Deferred payment price (Sum of 8 and 11) . . . $ 323.24
13) ANNUAL PERCENTAGE RATE . . . . . . 18 %

The Buyer agrees to pay the Total of Payments in 23 monthly installments of $ 12.00 each with a final monthly payment of $ 17.24 The first payment shall be due 30 days from the date of installation and the remaining payments on the same day of each month thereafter until the net amount owed has been paid. The finance charge applies from the date of installation.

Until full payment has been made, title to the property shall remain in the Company and Buyer will not sell, remove or encumber it; Buyer shall be responsible for all loss and damage thereto.

If the Buyer defaults in any payment or payments or fails to comply with any provision of this Contract, the full unpaid balance of the net amount owed shall at the Company's option and without notice become immediately due and payable, and in the event of any such default the Company shall have all of the rights granted to a secured party under the provisions of Part 5 of Chapter 9 of the Uniform Commercial Code as in effect in Rhode Island.

The Buyer may pay the balance due in full at any time. If the Buyer should pay in full within ninety days of billing date a discount of $ 48.51 will be allowed; if the Buyer should pay in full after ninety days the finance charge will be partially refunded on the assumption that the finance charge is paid in equal monthly installments over the term of this contract.

The Company hereby waives the benefits of any law which provides a lien for suppliers of labor or materials on real property of the Buyer.

The Buyer hereby acknowledges receipt of a completely filled-in copy of this Contract.

Witness: _____

Received above Cash Deposit $ 30

Signature _____

PROVIDENCE GAS COMPANY

By _____

FORM 231 REV. 5M 12-73 T2927

# APPENDIX B
## MODEL FORMS
### Detailed Table of Contents
#### Prepared by Board of Governors of the Federal Reserve System

#### (TYPICAL FORMATS OF DISCLOSURE)

| EXHIBIT | FORMS | CCH ¶ |
|---|---|---|
| A | Periodic Statement (Manual billing)—Open End Credit | 3851 |
| B | Periodic Statement (Automated billing)—Open End Credit | 3852 |
| C | Retail Instalment Contract | 3853 |
| D | Promissory Note | 3854 |
| E | Statement for Instalment Loan | 3855 |
| F | Notice of Right of Rescission | 3856 |

[¶ 3853]  Retail Instalment Contract

---

Seller's Name: _____  Contract # _____

### RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT

The undersigned (herein called Purchaser, whether one or more) purchases from _____ (seller) and grants to _____ a security interest in, subject to the terms and conditions hereof, the following described property.

| QUANTITY | DESCRIPTION | AMOUNT |
|---|---|---|
| | | |

Description of Trade-in:

Sales Tax
Total

PURCHASER'S NAME _____
PURCHASER'S ADDRESS _____
CITY _____ STATE _____ ZIP _____

1. CASH PRICE                                    $_____
2. LESS·  CASH DOWN PAYMENT    $_____
3.           TRADE-IN                      _____
4.           TOTAL DOWN PAYMENT      _____ $_____
5. UNPAID BALANCE OF CASH PRICE       $_____
6. OTHER CHARGES:
                                                 $_____
7. AMOUNT FINANCED                       $_____
8. FINANCE CHARGE                          $_____
9. TOTAL OF PAYMENTS                      $_____
10. DEFERRED PAYMENT PRICE (1+6+8)  $_____
11. ANNUAL PERCENTAGE RATE           _____%

#### Insurance Agreement

The purchase of insurance coverage is voluntary and not required for credit. _____ (Type of Ins.) _____ insurance coverage is available at a cost of $_____ for the term of credit.

  I desire insurance coverage

Signed _____ Date _____

  I do not desire insurance coverage

Signed _____ Date _____

Purchaser hereby agrees to pay to _____ _____ at their offices shown above the "TOTAL OF PAYMENTS" shown above in _____ monthly installments of $_____ (final payment to be $_____) the first installment being payable _____ 19__, and all subsequent installments on the same day of each consecutive month until paid in full.  The finance charge applies from ___ (Date) ___

Signed _____

Notice to Buyer: You are entitled to a copy of the contract you sign.  You have the right to pay in advance the unpaid balance of this contract and obtain a partial refund of the finance charge based on the "Actuarial Method."  [Any other method of computation may be so identified, for example, "Rule of 78's," "Sum of the Digits," etc.]

---

This form, when properly completed, will show how a creditor may comply with the disclosure requirements of the provisions of paragraphs (b) [¶ 3566] and (c) [¶ 3567] of § 226.8 of Regulation Z for the type of credit extended in this example.  This form is intended solely for purposes of demonstration and it is not the only format which will permit a creditor to comply with disclosure requirements of Regulation Z.